#27488, #27490-a-GAS
**2016 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

(27488)

IN THE MATTER OF THE ADOPTION
OF A.A.B., minor child.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(27490)

IN THE MATTER OF THE ADOPTION
OF B.A.B., minor child.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

KATHRYN L. MORRISON of
Bangs, McCullen, Butler,
  Foye & Simmons, LLP
Pierre, South Dakota                    Attorneys for appellees Troy &
                                        Twila Hansen.


JOSEPH N. THRONSON
Special Assistant Attorney General
Department of Social Services
Pierre, South Dakota                    Attorneys for appellant State of
                                        South Dakota.

\* \* \* \*

ARGUED FEBRUARY 17, 2016
OPINION FILED **03/09/16**

SEVERSON, Justice

[¶1.]        Troy and Twila Hansen, Petitioners, filed petitions to adopt two minor children over which the South Dakota Department of Social Services (referred to throughout as DSS or Department) has custody.  DSS moved to dismiss the petitions for lack of standing under the adoption statutes.  The circuit court denied DSS's motions to dismiss the petitions, and we granted DSS's request for intermediate appeal.

## Background

[¶2.]        DSS received custody of A.A.B., born in September 2012, and B.A.B., born in October 2013, after a circuit court terminated parent's parental rights through abuse and neglect proceedings.[1]  Petitioners are foster parents who have been caring for A.A.B. since January 2013.  Since birth, B.A.B. has been in foster care with another family, the Homelvigs.  DSS initially approached Petitioners to place B.A.B. in their home.  However, Petitioners were unable to take B.A.B. at that time.  In December 2013, just a few months after DSS placed B.A.B. with the Homelvigs, Petitioners told DSS that they could care for B.A.B.  DSS determined that it wanted to place both siblings in the same home, but declined at that time to move B.A.B.  Nearly a year later, in October 2014, DSS informed Petitioners that it wanted to place A.A.B. in the home of the Homelvigs with B.A.B.

[¶3.]        In response, Petitioners filed petitions for adoption of A.A.B. and B.A.B.  DSS moved to dismiss the petitions.  It alleged that, without DSS's consent, Petitioners lacked standing to petition to adopt children that are in the custody of

---

1.        Parental rights were terminated on May 2, 2014.

DSS. The circuit court disagreed and ruled that SDCL chapter 25-6 allows Petitioners to adopt children within the custody of DSS, without approval of DSS. Because the case presented a purely legal issue, the court did not hear testimony or make factual determinations. In this intermediate appeal, DSS raises a matter of first impression: Whether Petitioners may file a petition to adopt children in the custody of the Department of Social Services without its consent.

## Analysis

[¶4.] "[T]he rights and procedures for adoption are governed by statute." *In re Adoption of D.M.*, 2006 S.D. 15, ¶ 10, 710 N.W.2d 441, 446. Interpretation of those statutes is a question of law reviewable de novo. *Id.* ¶ 3, 710 N.W.2d at 443. Petitioners contend they have standing under SDCL 25-6-2, which provides,

> Any minor child may be adopted by any adult person. However, the person adopting the child must be at least ten years older than the person adopted.
>
> In an adoption proceeding or in any proceeding that challenges an order of adoption or order terminating parental rights, the court shall give due consideration to the interests of the parties to the proceedings, but shall give paramount consideration to the best interests of the child.

DSS contends that SDCL 25-6-2 is inapplicable to this case because these children were adjudicated abused and neglected under SDCL chapter 26-8A and Petitioners are not interested parties in the abuse and neglect proceedings.

[¶5.] SDCL 26-8A-29.1 provides in part that: "No *intervention* may be allowed in a proceeding involving an apparent, alleged, or adjudicated abused or neglected child, including an adoption or guardianship proceeding for a child placed in the custody of the Department of Social Services pursuant to § 26-8A-27[.]" (Emphasis added.) In addition, a court that has terminated parental rights has

continuing jurisdiction of an abused and neglected child for purposes of reviewing the status of the child until an adoption is complete. *See* SDCL 26-8A-29. However, Petitioners have not intervened into an abuse and neglect or adoption proceeding involving these children. They filed independent petitions to adopt both children under SDCL 25-6-2.[2] We disagree with DSS's position that there is no discernible difference between intervention and a petition for adoption.[3] The ongoing jurisdiction of the court that terminated parental rights is not exclusive. SDCL 26-8A-29 explicitly provides for adoption proceedings outside the abuse and neglect proceedings of SDCL chapter 26-8A. It provides: "The continuing jurisdiction of the court according to this section does not prevent the acquisition of jurisdiction of the child by another court for adoption proceedings according to law." *Id.* Further, SDCL 26-6-21 provides:

---

2. We note that B.A.B. does not reside with Petitioners. Although SDCL 25-6-9 requires a child to live in the adoptive home for at least six months before a petition to adopt may be granted, SDCL 25-6-10 allows a petition to be "filed with the circuit court before the six-month period required by § 25-6-9 has passed."

3. DSS asserts that our prior case law has "foreclosed any possibility that a family member could simply file his or her own petition for adoption." *See In re D.M.*, 2004 S.D. 34 ¶ 8, 677 N.W.2d 578, 581; *In re Adoption of D.M.*, 2006 S.D. 15, ¶ 9, 710 N.W.2d at 446. These prior cases recognized that there is a limited right to intervention in abuse and neglect proceedings. In *In re Adoption of D.M.*, a foster family filed a petition to adopt a child, and the relatives of the child attempted to intervene in the adoption proceeding. We held that "[t]he adoption statutes . . . do not specifically give family members the right to intervene" in an adoption proceeding. 2006 S.D. 15, ¶ 9, 710 N.W.2d at 446. These cases do not control the outcome of this case as each involved an attempt to intervene in an abuse and neglect or an adoption proceeding rather than independent petitions for adoption.

> Whenever a child welfare agency [which includes DSS by definition in SDCL 26-6-1] licensed to place children for adoption shall have been given the permanent care, custody, and guardianship of any child and the rights of the parent or parents of such child shall have been terminated by order of a court of competent jurisdiction, the child welfare agency may consent to the adoption of such child *pursuant to the statutes regulating adoption proceedings.*

(Emphasis added.) Thus, SDCL chapter 25-6 applies to the adoption of children in DSS's custody due to termination of parental rights pursuant to abuse and neglect proceedings.[4]

[¶6.]    Next, DSS asserts that other statutes limit Petitioners' ability to adopt a child under SDCL 25-6-2. *See Huber v. Dep't of Pub. Safety*, 2006 S.D. 96, ¶ 14, 724 N.W.2d 175, 179 (quoting *Wildeboer v. S.D. Junior Chamber of Commerce*, 1997

---

4.    DSS cites to the decisions of several other jurisdictions to support its argument that Petitioners have no right to file a petition for adoption. These cases are inapplicable and distinguishable. The cases cited address state statutes that are different than South Dakota's provisions. Unlike South Dakota, several of those states have statutes containing specific and direct language requiring the consent of state departments that care for children. *See Idaho Dep't of Health and Welfare v. Hays*, 46 P.3d 529, 532 (Idaho 2002) (determining that pursuant to Idaho Code Ann. § 16-1504(1)(f) (West 2014), providing that "[c]onsent to adoption is required from: (f) Any legally appointed custodian or guardian of the adoptee[,]" the consent of the Department of Health and Welfare was necessary prior to adoption of a child for whom it acted as guardian); *In re Adoption of S.C.P.*, 527 A.2d 1052, 1054 (Pa. 1987) (Foster parents have no standing to pursue adoption where the county children's bureau refused to consent, a power given to the bureau under 23 Pa. Stat. and Cons. Stat. Ann. § 2711(a)(5) (West 2004), which states "consent to an adoption shall be required of the following: (5) [t]he guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required."); *In re E.G.*, 738 N.W.2d 653, 656-57 (Iowa Ct. App. 2007) (determining that foster parent had a right to intervene in termination proceedings but making "no determination whether the Department should consent to an adoption if/or when an adoption petition is filed" because "[n]o adoption petition has ever been filed").

S.D. 33, ¶ 24, 561 N.W.2d 666, 670) ("[G]eneral statutes must yield to specific statutes if they are not consistent."). According to DSS, DSS must grant its consent before Petitioners can petition to adopt a child in DSS's custody. First, DSS directs us to SDCL 26-4-9.1, which provides: "The Department of Social Services shall establish a program of adoption services. The secretary of social services may adopt reasonable and necessary rules for the operation of the program of adoption services including. . . [a]doptive applications and placements[.]" Pursuant to SDCL 26-4-9.1, DSS promulgated ARSD 67:14:32:17, which states:

> An applicant shall not file a petition to adopt a child placed with them by the department without prior approval of the department. When the department has given legal approval to an applicant to begin legal proceedings for the completion of adoption, the department shall send legal information about the child to the applicant's attorney.

According to DSS, this regulation allows it to withhold its consent. However, "an administrative regulation cannot adopt requirements that 'expand upon the statute that it purports to implement.'" *In re Luff Expl.*, 2015 S.D. 27, ¶ 17, 864 N.W.2d 4, 9 (quoting *State Div. of Human Rights, ex rel. Ewing v. Prudential Ins. Co. of Am.*, 273 N.W.2d 111, 114 (S.D. 1978)). "[R]ules adopted in contravention of statutes are invalid." *Id.* (quoting *Paul Nelson Farm v. S.D. Dep't of Revenue*, 2014 S.D. 31, ¶ 24, 847 N.W.2d 550, 558). The rule promulgated by DSS contravenes SDCL 26-4-9.1. Agreeing with DSS's contention that it "alone [has] the authority to determine permanent placement of the children" would divest the circuit court of the jurisdiction entrusted to it under SDCL 25-6-6. *See* SDCL 25-6-6 ("The circuit court is vested with the jurisdiction to hear, try, and determine all matters relative to the

adoption of children, subject to the right of appeal in the same form and manner as appeals are taken from the circuit court."). No statute allows DSS to prevent adoption filings in the circuit court. Even DSS's ability to promulgate rules on and select adoptive placement is subject to judicial oversight if certain conditions under SDCL 26-8A-29.1 are met.[5]

[¶7.]    The adoption statutes within SDCL chapter 25-6 also support that Petitioners can petition to adopt children within the custody of DSS. SDCL 25-6-11 requires a petitioner to notify DSS of a petition to adopt a child in its custody and requires DSS to make a recommendation to the court as to the desirability of the adoption. In addition, both SDCL 25-6-11 and 25-6-12 allow for DSS to appear in adoption proceedings involving children in its custody. SDCL 25-6-11 allows DSS to "appear in any procedure the same as the party in interest[.]"

[¶8.]    We agree with Petitioners and the circuit court that if DSS has the ability to control who may petition for adoption with the circuit court, SDCL 25-6-11 would be rendered meaningless. SDCL 25-6-11 provides:

> *Upon the filing of a petition for the adoption of a minor child the petitioner therein shall notify the Department of Social Services,* by mailing to the department a copy of the petition. The petitioner also shall notify the department of the date fixed for hearing the petition, or mail to the department a copy of the order fixing the date of the hearing. *The department shall make a recommendation as to the desirability of the adoption.* The

---

5.    SDCL 26-8A-29.1 provides in part:

> Except under circumstances where placement was with another relative of the child, any relative who has been denied adoptive placement by the Department of Social Services may request a hearing to determine if the placement was an abuse of discretion. The request shall be filed with the circuit court having jurisdiction pursuant to § 26-8A-29[.]

> department may appear in any procedure the same as the party in interest, and may request a postponement of hearing on the petition in the event more time is needed for its investigation. *This section only applies to a child in the custody of the department.*

(Emphasis added.) Providing DSS notice when a petition is filed to adopt a child within its custody is consistent with the right of any person to adopt any minor child. *See* SDCL 25-6-2. If DSS had the ability to prevent the filing of petitions to adopt, then notice to the Department would be unnecessary. And DSS would not need to request a postponement on the hearing to complete an investigation because it would have had the time needed to investigate the case before approving the petition for filing. Likewise, if DSS approval is a prerequisite to filing a petition with the circuit court, a recommendation by DSS to the circuit court on the desirability of the adoption would be a mere formality. Therefore, DSS's interpretation of the statutes and its administrative rule would grant it more authority than the plain language of the statutes.

[¶9.] DSS concedes that "by its plain language, SDCL 25-6-11 would seem to allow the Petitioners to seek to adopt A.A.B. and B.A.B. without the Department's consent[.]" Despite this, DSS argues that such an interpretation "is not supported by the legislative history of SDCL 25-6-11." However, "[r]esorting to legislative history is justified only when legislation is ambiguous, or its literal meaning is absurd or unreasonable. Absent these circumstances, we must give legislation its plain meaning." *Jensen v. Turner Cty. Bd. of Adjustment*, 2007 S.D. 28, ¶ 5, 730 N.W.2d 411, 413.

[¶10.]     DSS asserts that the ambiguity in SDCL 25-6-11 arises by examining other statutes relating to the adoption of minor children.  According to DSS, SDCL 25-6-12, SDCL 26-8A-29.1, and SDCL 26-4-9.1 require DSS's approval of adoptions of children within its custody.  We disagree; these statutes are unambiguous and we will not resort to legislative history to discern their meaning.  Nothing within SDCL 26-8A-29.1[6] or SDCL 26-4-9.1[7] suggests that the consent of DSS is necessary for an adoption of a child within its custody.  SDCL 25-6-12 provides:

---

6.     SDCL 26-8A-29.1 provides:

> Except under circumstances where placement was with another relative of the child, any relative who has been denied adoptive placement by the Department of Social Services may request a hearing to determine if the placement was an abuse of discretion.  The request shall be filed with the circuit court having jurisdiction pursuant to § 26-8A-29 and shall be filed within thirty days of written notification from the department by regular mail to the relative's last known address.  The hearing shall be held within thirty days of the filing of the request for hearing and may be continued for not more than thirty days upon good cause shown.  The relative shall be granted limited intervention only for the purpose of the placement review hearing.

> No intervention may be allowed in a proceeding involving an apparent, alleged, or adjudicated abused or neglected child, including an adoption or guardianship proceeding for a child placed in the custody of the Department of Social Services pursuant to § 26-8A-27, except as provided by this chapter and under the Indian Child Welfare Act, (25 U.S.C. §§ 1901 to 1963, inclusive), as amended to January 1, 2005.

7.     SDCL 26-4-9.1 provides:

> The Department of Social Services shall establish a program of adoption services.  The secretary of social services may adopt reasonable and necessary rules for the operation of the program of adoption services including:

>> (1)     Program administration;

(continued . . .)

> *Before the hearing on a petition for adoption, the person adopting a child, the child adopted, and the other persons whose consent is necessary, shall execute their consent in writing*, and the person adopting shall execute an agreement to the effect that the child adopted shall be treated in all respects as his or her own.  The consent forms and the agreement of the person adopting shall be filed with the court.  At the time of the hearing on the petition, the person adopting a child and the child to be adopted shall appear in court or by other means as may be allowed by the court.  *All persons whose consent is necessary*, except the child and the person adopting the child, unless a different means of appearance is allowed by the court, *may appear by a person filing with the court a power of attorney*, or a guardian may appear on behalf of the child, or a duly incorporated home or society for the care of dependent or neglected children may by its authorized officer or agent, consent to the adoption of a child surrendered to such home or society by a court of competent jurisdiction.  *The Department of Social Services may appear in court and consent to the adoption of a child surrendered to it by any court of competent jurisdiction*, or, if the department has custody of a child by written agreement of a parent or parents with power of attorney to consent to adoption, by the officer of the department holding such power of attorney.

(Emphasis added.).  DSS essentially argues that according to SDCL 25-6-12, it is a "person whose consent is necessary."  However, those "persons whose consent is necessary" are explicitly defined within the provisions of the chapter.  *See* SDCL 25-6-4 (Absent certain circumstances, "[n]o child may be adopted without the consent of the child's parents."); SDCL 25-6-3 ("A married man not lawfully separated from his wife cannot adopt a child without the consent of his wife, nor can a married

_____

(. . . continued)
      (2)    Adoptive applications and placements;
      (3)    Investigations and studies;
      (4)    Qualifications for adoptive families;
      (5)    Postadoptive services;
      (6)    Protection of records and confidential information required by statutory law to be held confidential; and
      (7)    Establishing reasonable fees consistent with the costs of such services.

woman, not thus separated from her husband, without his consent, provided the husband or wife not consenting is capable of giving such consent."). DSS is not a person whose consent is necessary. Instead, the Department is separately addressed in SDCL 25-6-12, which provides that DSS "may appear and consent to the adoption[.]"

[¶11.]    Contrary to DSS's assertion, the statute's language "may appear and consent" does not require consent from DSS before the court may proceed on an adoption matter. Instead, it allows DSS to assert its position; it could choose to consent, or it could oppose the adoption at the petition hearing. *See Matter of Groseth Int'l*, 442 N.W.2d 229, 231 ("Ordinarily the word 'may' in a statute is given permissive or discretionary meaning. It is not obligatory or mandatory as is the word 'shall.'"). The effect of refusal to consent by DSS is not a bar to all proceedings under SDCL chapter 25-6, but should be taken into consideration by the circuit court pursuant to SDCL 25-6-2, which states: "In an adoption proceeding or in any proceeding that challenges an order of adoption or order terminating parental rights, the court shall give due consideration to the interests of the parties to the proceedings, but shall give paramount consideration to the best interests of the child." This interpretation harmonizes SDCL 25-6-12 with SDCL 25-6-11, which requires the Department to make a recommendation as to the desirability of an adoption pertaining to a child in its custody. *See Huber*, 2006 S.D. 96, ¶ 14, 724 N.W.2d at 179 (quoting *State v. $1,010 in Am. Currency*, 2006 S.D. 84, ¶ 8, 722 N.W.2d 92, 94) ("Statutes are to be construed to give effect to each statute so as to

have them exist in harmony."). It also ensures that the court receive the benefit of DSS's expertise.

[¶12.] Interpreting the statutes as DSS urges would grant DSS greater protections than those given to biological parents. Under SDCL 25-6-4 parental consent may be waived by the court under certain circumstances. No similar provision exists to address waiver of DSS consent, which absence is appropriate because DSS consent is not a prerequisite to adoption. If DSS controlled who could petition the court for adoption or its approval was a prerequisite for granting adoption, there would be little to no oversight of DSS's decisions. Other jurisdictions that require a child welfare agency's approval of an adoption usually also enable judicial review of an agency's decision. In those jurisdictions, the court may review whether the adoption is in the best interests of the child or whether the agency's consent is being withheld arbitrarily or unreasonably, as South Dakota permits with certain adoption placements, SDCL 26-8A-29.1. *See* 2 C.J.S. *Adoption of Persons* § 52 (2015).[8] Our interpretation is consistent with the plain language of

---

8. 2 C.J.S. *Adoption of Persons* § 52 explains:

> Despite the statutory authorization granted to public agencies, boards, or officials to give or withhold consent, the courts are usually vested with discretion to allow an adoption without the consent of the agency where the court deems that the welfare of the child will be promoted by the adoption or where the objection or refusal to consent to adoption by the particular board, agency, or official is arbitrary or unreasonable. Similarly, the court in adoption proceedings may have power to dispense with the consent ordinarily required of a private custodial or placement agency having control of the child where it deems such action warranted by the best interests of the child.

(footnotes omitted.)

the statutes and SDCL chapter 25-6's main concern: the best interest of the child—which is to be given "paramount consideration" in adoption proceedings. *See* SDCL 25-6-2.

*Appellate attorney fees*

[¶13.]     Petitioners have moved this Court for their appellate attorney's fees. However, they have not cited authority that allows an award of attorney fees in an adoption case. Therefore, we deny their request.

## Conclusion

[¶14.]     Troy and Twila Hansen have standing to initiate adoption proceedings under SDCL chapter 25-6. DSS lacks statutory authorization to prevent petitions for adoption of children in DSS's custody from being filed with the circuit court. And DSS is not a party whose consent is necessary before a circuit court may order adoption of a child. Since this is an intermediate appeal challenging standing, we do not address the merits; whether Petitioners meet the requirements to adopt A.A.B. and B.A.B. We affirm.

[¶15.]     GILBERTSON, Chief Justice, and ZINTER, WILBUR and KERN, Justices, concur.